UNITED STATES DISTRICT COURT  ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

---

JOSE MARMOL,

                              Plaintiff,

         - versus -

DIVISION 1181 A.T.U. - NEW YORK
EMPLOYEES PENSION FUND & PLAN,

                              Defendant.

MEMORANDUM
AND ORDER
12-CV-1861

---

A P P E A R A N C E S:

    JOSE MARMOL
        901 Drew Street, Apartment 135
        Brooklyn, NY 11208
        *Pro Se*

    MINTZ & GOLD, LLP
        470 Park Avenue South
        New York, NY 10016
    By:    Ryan Lawler
        *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Jose Marmol brings this suit against the Division 1181 A.T.U. - New York Employees Pension Fund (the "Fund"), for disability benefits under the Fund's employee benefits plan, the Division 1181 A.T.U. - New York Employees Pension Plan (the "Plan"). Marmol contends that he has been totally disabled since 2006, rendering him eligible for disability benefits under the Plan. The Fund moves for summary judgment on the grounds that Marmol has failed to exhaust administrative remedies, and, in any event, he does not qualify for benefits under the express terms of the Plan. Because the uncontested Plan documents

substantiate the Fund's arguments, I grant summary judgment in full and direct that judgment be entered denying Marmol's claim.

## BACKGROUND

A.  *Undisputed Facts*

Marmol is a Participant in the Plan by virtue of his prior employment as a driver with Pioneer Transportation Corp. from October 2000 until March 2007. *See* Plan § 1.22, at 4,[1] § 2.1, at 5[2] (D'Ulisse Dec., Ex. 1, ECF No. 16-1); *see also* Marmol Calc. Analysis (D'Ulisse Dec., Ex. 3, ECF No. 16-3); Marmol Pay Stubs (Opp., Ex. 5, ECF No. 26-1). As a Participant, Marmol may receive a Full Disability Pension[3] under the Plan if he:

> (1) [is] forty- five years of age or older;
>
> (2) has completed at least ten (10) years of consecutive Credited Service and has worked not less than 1,000 Hours of Service in each of the ten (10) consecutive Plan Years preceding the date he sustained the disability;
>
> (3) . . . becomes Totally and Permanently Disabled;
>
> (4) . . . is actively employed by an Employer in Employment in the Industry at the time he sustains the disability that is or becomes a Total and Permanent Disability; and
>
> (5) files an application for a disability pension.

---

[1] Section 1.22 of the Plan provides that "Participant means any Employee or former Employee who meets the requirements of the provisions of Article 2."

[2] Section 2.1(a) of the Plan generally provides that "[e]ach Employee shall become a Participant as of . . . the Employee's first date of Employment."

[3] The monthly disability pension benefit that a Participant may receive is set forth in Section 5.2 of the Plan document. A Full Disability Pension monthly benefit is equal to the Participant's basic monthly wage in effect on January 1, 2005, discounted by figures representing the participant's job classification and years of credited service. Plan § 5.2(a). The Partial Disability Pension monthly benefit is equal to one half the Full Disability Pension benefit. *Id.* § 5.2(b).

Plan § 4.2(a), at 11;[4] *accord* Summary Plan Description § 8, at 15 (D'Ulisse Dec., Ex. 2, ECF No. 16-2).[5] The Plan defines "[a] year of Credited Service" as "any Plan Year during which a Participant has completed at least 1,000 Hours of Service in Employment." Plan § 1.9, at 2.[6] A "Plan Year is the consecutive twelve month period from September 1 through and including August 31." *Id.* § 1.25, at 5.

"Totally and Permanently Disabled" means a "total disability as a result of bodily injury or disease such that the Participant is prevented thereby from engaging in any occupation or employment and with respect to which it appears probable that such disability will be permanent and continuous during the remainder of the Participant's lifetime." Plan § 4.3, at 12. The determination is based solely on whether the Participant qualifies for a disability benefit under the Federal Social Security Act, except it does not include any disability that "was suffered as the result of [the Participant's] criminal activity, habitual drunkenness, self-inflicted injury,

---

[4] Subsection (b) of Section 4.2 sets forth the eligibility criteria for a Partial Disability Pension, which are identical to the eligibility criteria for a Full Disability Pension, except that the third criterion requires that the applicant "becomes permanently and totally disabled from performing his customary Employment in the Industry (i.e., Participant is unable to perform work for an Employer) but who is not Totally and Permanently Disabled from working and can work outside the Industry." Subsection (c) of Section 4.2 provides eligibility criteria for receiving a Full Disability Pension upon establishing that the applicant has a life expectancy of six months or less.

[5] The Summary Plan Description describes the eligibility requirements as follows:
You are eligible for a Full Disability Pension if you:
    (A) are 45 years of age or older;
    (B) have at least 10 consecutive Years of Credited Service and have worked not less than 1,000 Hours of Service in each of the 10 Years preceding your disability;
    (C) become Totally and Permanently Disabled, unless the disability is caused by your criminal activity, habitual drunkenness, self-inflicted injury, addiction to narcotics or as a result of an injury sustained in military service;
    (D) are actively Employed in the Industry at the time you sustain the disability; and
    (E) file an application for a disability pension.
Summary Plan Description § 8, at 15.

[6] *See also* Plan § 3.1, at 6 ("A Participant shall earn one year of Credited Service for each Plan Year during which the Participant has completed at least 1,000 Hours of Service in Employment.").

3

addiction to narcotics or as a result of an injury sustained in military service." Plan § 4.3, at 12; *accord* Summary Plan Description § 8, at 15.

The Summary Plan Description instructs Participants on how to apply for benefits under the Plan:

> In order to receive benefits from the Pension Fund, you must complete an application form and submit it with requested documents to the Fund Office. Your application will not be considered complete until all required documents are received by the Pension Fund. The application forms will explain what documents are required as well as the benefit options available to you. The Fund Office is available to provide you with application forms or answer any questions you may have about completing the forms.

Summary Plan Description § 20, at 30.

The Plan distinguishes between disability pensions and "Normal Retirement Pensions." A Participant qualifies for a normal retirement pension upon reaching "Normal Retirement Age" and "furnish[ing] proof satisfactory to the Board that he has at least 5 years of Credited Service." Plan § 4.1, at 10. "Normal Retirement Age" is defined as "the later of age 65 or the fifth anniversary of the date a Participant commences participation in the Plan, provided the Participant is Employed in the Industry upon attainment of Normal Retirement Age." *Id.* § 1.20, at 4.

Marmol was hired by his participating employer on October 1, 2000. D'Ulisse Dec. ¶ 20, Ex. 3. Marmol's employment was terminated in March 2007. *Id.* ¶ 21. In December 2007, the benefits administrator for the Plan informed him that he had earned seven years of credited service as of March 19, 2007. Opp. ¶ 16, Ex. 4. Marmol was born in 1970, and was 37 years old at the time of his termination. *Id.* ¶ 22. He is now 42 years old.

Marmol has furnished documentation from the Social Security Administration ("SSA") indicating that he became disabled under the SSA rules on March 24, 2006. *See* 3/17/07 SSA Ltr. (Opp. ¶ 13, Ex. 3, ECF No. 26). He became entitled to SSA disability benefits beginning in September 2006. *Id.*

Marmol states that in March 2007, he met with his Union President and expressed his desire to apply for and collect his disability pension under the Plan. Opp. ¶ 14. He has since also contacted federal and city agencies to help him collect his disability pension, but all efforts have been fruitless. *Id.* ¶ 15. According to the Director of the Fund, Marmol has never filed an application for a Full Disability Pension with the Fund. D'Ulisse Dec. ¶ 12.[7] Marmol does not deny that he failed to submit an application for disability benefits to the Fund.[8]

B.  *Procedural History*

Marmol filed suit on March 13, 2012. On July 2, 2012, the Fund moved for summary judgment. Oral argument was held on August 7, 2012.

## DISCUSSION

A.  *Summary Judgment Standard*

According to the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" under Rule 56 if its resolution "might affect the outcome of the suit under the governing law."

---

[7] Although the Director's declaration states only that Marmol never filed an application for a *Full Disability Pension*, I asked counsel for the Fund at oral argument whether the Fund had any record of Marmol's applying for disability benefits of any sort, whether Full or Partial, and he answered that the Fund did not.

[8] Marmol's written opposition to the Fund's motion does not deny that he failed to submit an application for disability benefits. When asked at oral argument whether he had filed an application, Marmol first admitted that he had not. He then said that he had filed an application orally rather than in writing, and that no one had given him a written application. Then, at the end of oral argument, he said that actually his lawyer had filed an application for him, but he had refused to sign it because he didn't agree with it, and he did not have a copy of it. I have instructed the Fund to mail the application form to Marmol.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

B.     *Analysis*

    1.     *Marmol Is Not Entitled to Disability Benefits Under the Plan*

Marmol fails to qualify for a disability pension under the Plan for numerous reasons. First, Marmol is currently 42 years old. The Plan clearly requires that a Participant be 45 years or older to receive a disability pension.[9] Second, Marmol has at most seven years of credited service. The Plan requires that a Participant have completed at least ten consecutive years of credited service before he may qualify for either a Partial or a Full disability pension. Third, Marmol never filed an application for a disability pension, which is an eligibility requirement under the Plan. For these undisputed reasons, it is clear that Marmol is not eligible for a disability pension under the Plan.

    2.     *The Plan Requirements Are Not Unlawful*

Marmol does not contest the above facts in his opposition to the Fund's motion for summary judgment; instead, he appears to argue that the Plan's eligibility requirements are unlawful because they violate ERISA or other laws, and/or are arbitrary and capricious. *See* Opp. ¶¶ 17-18. However, in so arguing, Marmol conflates the requirements for a normal retirement benefit with those for a disability pension.

---

[9] This age limitation is the same regardless of whether the Participant is seeking a Full Disability Pension or only a Partial Disability Pension. *See* Plan § 4.2(a)-(b).

The Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. § 1001 *et seq.*, provides that each pension plan shall provide a "normal retirement benefit" that is nonforfeitable upon attainment of normal retirement age[10] and completion of five years of service. 29 U.S.C. § 1053(a). Marmol cites to this requirement in arguing that the 10-year credited service requirement that the Plan imposes for disability pensions violates ERISA. *See* Opp. ¶¶ 10, 17.

However, under ERISA, a plan that provides disability benefits is called a "welfare benefit plan" (as opposed to a pension plan, which provides retirement income). 29 U.S.C. § 1002(1), (2)(A). "ERISA regulates pension plans far more extensively than welfare plans." *Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 491 (2d Cir. 1988) Unlike its provisions for pension plans, ERISA does not impose mandatory vesting or entitlement criteria for welfare benefit plans. *See Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732 (1985) ("[ERISA] does not regulate the substantive content of welfare-benefit plans."); *Moore*, 856 F.2d at 491 ("[W]elfare plans are expressly exempted from [ERISA's] detailed minimum participation, vesting and benefit-accrual requirements . . . ."). "Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 576 (2d Cir. 2006) (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)). Thus, a participant in a welfare plan is entitled only to such relief as is available "under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see Stewart v. NYNEX Corp.*, 78 F. Supp. 2d 172, 188 (S.D.N.Y. 1999) ("Any entitlement to relief under § 502(a)(1)(B) must be found only 'under the terms of the plan[.]" (citing 29 U.S.C. § 1132(a)(1)(B))).

---

[10] ERISA defines "normal retirement age" as "the earlier of-- (A) the time a plan participant attains normal retirement age under the plan, or (B) the later of-- (i) the time a plan participant attains age 65, or (ii) the 5th anniversary of the time a plan participant commenced participation in the plan." 29 U.S.C. § 1002(24).

As noted above, the Plan has a separate section setting forth the eligibility criteria for normal retirement benefits, and these provisions accord with ERISA's nonforfeitability provisions.[11] By contrast, ERISA does not impose mandatory entitlement requirements for disability benefits. Thus, the Plan's eligibility criteria for disability benefits – including the 10-year credited service requirement – do not violate ERISA.[12] Nor are the Plan's criteria arbitrary and capricious.

3. *Marmol Has Failed To Exhaust Administrative Remedies*

Section 1132(a) of ERISA provides, in relevant part, that a participant or beneficiary of a plan, including a welfare plan, may bring suit "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B); *see also id.* § 1002(1), 1002(3).[13]

However, prior to bringing suit, plan participants must avail themselves of reasonable claim procedures provided for by the employee benefit plan. *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 219 (2d Cir. 2006) (citing 29 C.F.R. § 2560.503-1; *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 140 (2d Cir. 2000)); *see* 29 U.S.C. § 1133 (requiring all employee benefit plans to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review"); *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) ("[E]xhaustion in the context of ERISA requires [that the claimant pursue] only those administrative appeals provided for in the relevant plan or

---

[11] As noted above, a Participant qualifies for a normal retirement pension under the Plan upon reaching "the later of age 65 or the fifth anniversary of the date a Participant commences participation in the Plan," and "furnish[ing] proof satisfactory to the Board that he has at least 5 years of Credited Service." Plan §§ 1.20, 4.1.

[12] Marmol also cites to the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085 (Oct. 22, 1986), and the Small Business Job Protection Act of 1996, Pub. L. 104-188, 110 Stat 1755 (Aug. 20, 1996), in arguing that the 10-year credited service requirement is unlawful. However, Marmol directs my attention only to portions of those acts that amended the minimum vesting standards for pension plans set forth in Section 203(a) of ERISA, 29 U.S.C. § 1053(a). As already explained in the text above, ERISA's requirements for pension plans do not apply to welfare plans.

[13] As used in ERISA, the term "plan" includes "employee welfare benefit plans," 29 U.S.C. § 1002(3), which are plans "established or maintained . . . for the purpose of providing [, *inter alia*] . . . benefits in the event of sickness, accident, disability, [or] death." 29 U.S.C. § 1002(1).

policy."). Failure to exhaust these administrative remedies is an affirmative defense to suit. *See Paese v. Hartford Life Accident Ins. Co.*, 449 F.3d 435, 443, 446 (2d Cir. 2006). Subject to equitable considerations such as waiver, estoppel, and futility, failure to pursue reasonable claim procedures is grounds to dismiss or enter summary judgment on an ERISA claim. *See Eastman Kodak Co.*, 452 F.3d at 219 ("Unless a 'clear and positive showing' is made that it would be futile for the claimant to pursue her claim through the internal claims process, 'that remedy must be exhausted prior to the institution of litigation.'" (quoting *Jones*, 223 F.3d at 140)); *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 105 (2d Cir. 2005) (reviewing *de novo* a district court's dismissal of ERISA claims for failure to exhaust administrative remedies); *Kennedy*, 989 F.2d at 591-92 (affirming conversion of a motion to dismiss an ERISA claim for failure to state a claim on exhaustion grounds to a motion for summary judgment); *Saladin v. Prudential Ins. Co. of Am.*, 337 F. App'x 78, 80 (2d Cir. 2009) (affirming entry of summary judgment because plaintiff "failed to make a 'clear and positive showing' of futility in the pursuit of [the plan's] internal-claims process" (quoting *Eastman Kodak Co.*, 452 F.3d at 219) (internal quotation marks omitted)).

    Marmol does not dispute his failure to exhaust administrative remedies. Rather, he contends that filing an application is merely a "procedural requirement," and his failure to do so should not destroy his eligibility to receive benefits. Opp. ¶ 18 (citing *Canseco v. Constr. Laborers Pension Trust for S. California*, 93 F.3d 600, 607 (9th Cir. 1996)). I am unpersuaded. First, filing an application for benefits is one of the substantive eligibility requirements under the Plan, such that if Marmol fails to do so, he is in fact ineligible. *Cf. Canseco*, 93 F.3d at 607 (holding in context of retirement benefits that where "mandatory language guarantees retirement benefits" upon satisfying certain criteria that do not include the filing of an application, then

9

"[a]n employee's failure to apply for retirement benefits cannot destroy that employee's eligibility"). Second, even if applying were not a substantive criterion for eligibility, Marmol must pursue the claims process to administratively exhaust his claim before bringing suit. Marmol offers no reason why his failure to follow the claims process should be excused here.

Because Marmol has failed to make a "clear and positive showing" that filing his application for benefits would have been futile, his claim warrants summary judgment for failure to exhaust administrative remedies.

## CONCLUSION

The Fund's motion for summary judgment is granted because the undisputed facts show that Marmol failed to exhaust his administrative remedies and, in any event, is ineligible to receive disability benefits under the Plan. The Clerk of Court is directed to enter judgment in favor of the Fund and close the case.

So ordered.


John Gleeson, U.S.D.J.


Dated: August 7, 2012
      Brooklyn, New York